Good morning, your honors. I'd like to reserve three minutes for rebuttal, if I may. This is a claim by Lori Didway for Social Security disability benefits. The administrative law judge issued a decision finding that she was disabled as of February 21, 2002, through November 26, 2003, but not thereafter. We're here to show that the ALJ, in making this decision, made numerous errors of law, specifically at steps three, four, and five of the sequential evaluation process. I'd like to talk about the errors that occurred at steps four and five before I address step three, the reason being that those two errors, or the major errors, would result in an acceptance of true of the evidence and a remand for the payment of benefits, which would then render moot the step three argument. The most important contention is the evaluation of the opinion of the medical sources. In this case, we have a number of opinions after the date the ALJ found claimant not disabled that would indicate that she does, in fact, continue to be disabled. First and foremost is the opinion of the treating physician, which is an opinion that cannot be rejected, absent clear and convincing reasons. In the case of Barr, the ALJ denied, as of November 26, 2003, based on an opinion of an examining consulting physician. If you look at the medical records, there's really not all that it was based on. That was the majority of the reason why the administrative law judge came down to find that there was an ability to perform a range of light work. Prior to that, if you look, the dates are exactly the same. The date of that report is November 26, 2003, and the date that the ALJ found Ms. Didway became able to work is November 26, 2003. I don't doubt that that played an important role, but it was not my recollection that that's what it was limited to. Well, the ALJ did discuss subsequent treatment notes. The ALJ discussed a lack of neurological findings after November 26, 2003. That appears to be the starting point of the administrative law judge's November 26, 2003. What's important to note here is Ms. Didway had consistent reports of headaches, an MRI showing a herniated disc, a surgical consult, and in the surgical consult it says that we are going to try this surgery to help alleviate her headaches. There were no neurological deficits that caused her to have that surgery. The fact that she, after that surgery, has no neurological deficits is absolutely irrelevant. It's a red herring. She never claimed neurological deficits. She never had severe neurological deficits, and I think the judge says that they're mild neurological deficits, which is what the actual medical records show. So the reasoning for him rejecting the opinion of the treating physician. Unnecessary surgery, is that what you're saying? I am not saying it was unnecessary surgery. I'm saying it wasn't a neurological issue that resulted in that surgery. I thought it was an extended disc and they had to fuse. She did have a fusion. She had a herniation that they wanted to repair. They were hoping to improve blood flow to the brain. It's a neurological problem. You've got a disc that you have to take care of for the fusion. It's pretty neurological, I think. Well, Judge, the doctors are looking at the neurological issue in terms of whether there's absent reflexes, whether there is numbing and tingling down the extremities. And you'll see that that wasn't the basis for her to have this surgery. So in terms of whether she's improved or not, I would say let's look at the records after the surgery. She has physical therapy. All these physical therapies. The surgeon did say she was improved afterward. A very short period of time. She had an initial improvement. I think it was just for three or four months. And then after that she goes back to the surgeon and he says he's worried. And puts her into physical therapy. And physical therapy doesn't work. He said he's worried? He said he's worried is what his response was. I think that was in December of 04. That's not the correct date. I'll find that while I'm going through this. But he basically said that he's concerned about her ongoing symptoms at that point. There was some slight improvement. Okay. He was concerned. Concerned. Okay. So he was concerned. The other major issue in terms of the medical evidence is the psychological impairment. We have two opinions as to the effect of the psychiatric impairment after the date the judge found my client was no longer disabled. One is from defendant's doctor. He's a psychiatrist. He performed an examination. He administered tests. He diagnosed an IQ of 75. But he also found that my client was seriously limited in the ability to handle work stress and the ability to maintain attention and concentration. Now, the judge says he accepts this psychiatrist's opinion. But what's omitted from the ALJ's functional capacity assessment is any limitation regarding memory and concentration and any limitation regarding the ability to deal with work stress. You can't accept the opinion and then omit all the relevant restrictions and limitations. Now, there's a nurse practitioner who came to the exact same conclusion as a psychiatrist. I'm sorry, psychologist. It's very consistent. How does the ALJ get around this? He writes, well, I'm going to limit her to simple work. Well, simple work doesn't mean you can maintain memory and concentration and deal with work stress. They're absolutely apples and oranges. And to prove that, all you have to do is look at the vocational consultant's testimony. He says if there are serious limitations in the ability to maintain memory and concentration and serious limitations in the ability to deal with work stress, my client couldn't perform any work. The vocational consultant says if she could do simple work without any limitation in the memory and concentration, without any limitation in work stress, she could do some work. That's what he said. So it's these differences that would vitiate the holding of the ALJ. We get back to Dr. McPhee and Dr. Storey. Dr. Storey is the defendant psychologist who assessed all those limitations and who there is not a single reason given why his opinion should be rejected. There's no reason to state how an ALJ can convert those specific limitations into what the ALJ terms as just simple work. Didn't he say no neurological cognitive impairments? Dr. Storey? Dr. Storey, no, he didn't say that. Dr. Storey said that on the trail making B there were a number of mistakes, which I think was some evidence of a cognitive problem. And then he also, you know, he also assessed an IQ of 75. And what's also peculiar is the vocational consultant testified that an IQ of 75 wouldn't allow my client to do this work. And the ALJ says, well, wait a second, you're not a doctor. But he's a vocational consultant. He knows about that stuff. He was able to answer it. And the judge isn't ---- She had an IQ of 75 when she was a bookkeeper, didn't she? She most likely did, Your Honor. And I say that because ---- That's my understanding, IQ. Generally it stays the same. And I don't think there's any traumatic event to change that. My client did bookkeeping for 15 years. So if you start and you're able to do that one thing and do it over and over and over again, that's one thing. But where the judge says she can't do, you know, where she can't do her past work, well, what can she do? We have to look at that borderline intellectual functioning. You know, just like the judge takes the position that the vocational consultant can't be a doctor, the judge can't be a doctor. The judge can't say she doesn't have an IQ of 75, she doesn't have intellectual deficits, she doesn't have memory and concentration deficits, she's okay dealing with work stress, when defendant psychiatrist says, psychologist says differently and the treating nurse practitioner says differently, unless the judge gives us some clear and convincing reasons. The biggest case on point is going to be Orne versus Drew, as well as Lester v. Chader, which talks about identifying a conflict which wasn't done in this case. Once you identify the conflict, then you have to set forth clear and convincing reasons. Without the identification of the conflict, the judge has to cite what's called an abundance of evidence to show that these physicians' opinions are incorrect. And that doesn't appear to have been done in this case. I do see I'm out of time. I'll still give you a minute for rebuttal. Thank you. Good morning, Your Honors. My name is Elizabeth Feer and I represent Michael Astrew, the Commissioner of Social Security. Keep your voice up a little. Is that better? I would like to address specifically what my opponent has said during his argument. With regard to Dr. Harrington, who is the treating physician whose opinion the ALJ rejected, I would like to point out that the ALJ rejected that opinion, not only because it was inconsistent with other evidence of record, but it was also inconsistent with the treatment notes from Dr. Harrington's own clinic. Dr. Harrington was the surgeon, as I understood. I'm sorry. I'm sorry. Dr. Williams. Which one are you talking about? You're talking about Williams. Dr. Williams is the doctor. All he did to assess disability was complete a very cursory checkmark form that doesn't list any clinical findings. As the ALJ and the district court pointed out, the treating records from Squaw Peak, which is Dr. Williams' clinic, are not indicative of disability. The ALJ also found that it rejected Dr. Williams' opinion of disability based on the consultative examination of Dr. McPhee. Dr. McPhee is really the only doctor of record who actually conducted an examination and made clinical findings, and Dr. McPhee assessed a RFC. Well, at some earlier points, Dr. Williams had certainly, as treating physician, done some detailed findings, because when he referred her to the surgeon, he didn't do it just on the top of his head. I think what you're talking about is that the next view, Dr. Williams didn't do a thorough examination at that time. That's correct, but it's also correct that whatever Dr. Williams did in terms of detailed examinations isn't in the record. The treatment records from Squaw Peak are relatively cursory. They show medication adjustments and complaints, but they really don't have any listing of significant limitations. And I would also want to point out that the ALJ did accept the claim it was disabled for a closed period here. I'm still having a hard time hearing. Maybe you should slow down and tweak into the... And Dr. Harrington, who was the surgeon, he actually, as my opponent said, the surgery wasn't based on neurological findings, but on page 136 in the record, Dr. Harrington clearly says her neurological findings are back to normal, which obviously implies that at some point they weren't normal, which warranted the surgery. And that same date, although he says her residuals are worrisome, he also clearly said he was discontinuing any limitations. That was in September 2003, and that's on page 136. So there are all kinds of reasons for the ALJ to have rejected Dr. Williams' very cursory opinion of disability. In regard to the mental limitations, you're correct, Your Honor, the doctor's story did say on page 153 of the record that the findings were not indicative of cognitive impairment. Therefore, the ALJ's limitation to simple work, even with a 75 IQ, adequately accounts for any limitations she might have had based on psychological impairment. Now, I'm not a doctor, so I always struggle with these cases. Dr. Story had said in the same report that you just cited, the December of 2003 report. There were a number of different observations, and there was the one that you just cited, which is under a heading, Bender visual motor gestalt test. But the page before, and as had been cited by appellant, on the Trails B test, whatever that is, there's something suggestive of severe neurocognitive impairment. I'm not sure what that means, but I'm also not sure that Dr. Story's test comes out with a clean slate at the end of it. So is there something more that I should look at, or is there an overall conclusion offered up by Dr. Story that we should pay attention to? Yes, Your Honor, and I saw the same inconsistencies in the report and was unsure how to resolve them also. But Dr. Story did complete a medical source statement of the ability to perform work activities, and it does say that she is unlimited or very good in her ability to follow work rules, relate to coworkers, deal with the public. The findings on that form that are in contention here are Dr. Story's indications that the claimant had a... But the category is fair, which is defined as seriously limited but not precluded. And I would like to point out that the VE was never presented with that characterization of Dr. Story's findings. And those are dealing with work stress, maintaining attention and concentration, and complex job instructions. What the VE was presented with was a severe limitation, which is actually more consistent with the findings of Ms. Smerko, the non-acceptable medical source who made those conclusions. Subsequent to her first functional capacity assessment, wherein she indicated the claimant was not limited at all psychologically, and the ALJ and the district court pointed out that Ms. Smerko changed her opinion without any basis, didn't cite any basis. There's no intervening event that would have changed the functional capacity that dramatically. So back to the testimony. What was actually presented to the VE was moderately severe restrictions. This is on page 349. And the ability to understand and carry out instructions without any further clarification, respond appropriately to supervision, and respond to customary work pressures. The only one of those categories that has anything to do with Dr. Story's findings is the stress. He said fair ability to deal with work stress. We would point out that a cashier job that's simple and repetitive isn't a highly stressful job. Therefore, there's no problem with the ALJ's alternative Step 5 finding. It's based on the VE's testimony. And that also included a sit-stand option, which accounts for any additional limitations in Dr. McPhee's findings that claimant contends the ALJ didn't account for. But once again, back to the testimony regarding the severity of the impairment. The VE says severe means no ability at all. An extreme impairment. That's not what Dr. Story found. Dr. Story said fair, seriously limited, but not precluded. And that was in concentration. The question posed has this phrase moderately severe, which I guess I can understand in terms of language, but what it's supposed to mean I'm not sure. It sounds like it's a step back from severe equals no ability at all. So if you say moderately severe, well, there's some ability. So whether that's the same as the box that was checked by Dr. Story, I don't know. Right. But I would also point out that the moderately severe findings were made by Ms. Smerko and the ALJ rejected her opinion for good reason, as it was completely inconsistent with her initial determination. So basically the bottom line here is that the ALJ reasonably concluded the claimant had a severe work precluding limitations from her alleged onset date through November 2003. He picked that date because, you know, he has to pick some date, and that's the date of the only comprehensive physical examination in the record. And so the ALJ's finding that the claimant could perform a simple repetitive cashier job with a sit-stand option following her improvement from her cervical surgery is supported by the record. The district court explained why it was supported by the record. I would also like to point out that the ALJ's alternative step finding is not a post-toke rationalization. It's in the ALJ's decision. It's in the district court's decision. And as this court recently held in Tomasetti, even if this court finds the step 4 finding that the claimant could return to her bookkeeper job is completely in error, that step 5 finding is in the record, it's supported by evidence, and this court should uphold the district court's decision. Thank you. Mr. Slepian, you've got a minute for rebuttal. Thank you, Your Honor. I'd like to point out in Dr. Harrington's record, and this is the August of 03 record, he writes here that Ms. Didway's making a good recovery from her surgery. Her main complaint is the headaches, which have been unaffected by the entire process. And then that September of 03 note from Dr. Harrington, he writes, the residuals in the neck are worrisome, and I would like to have those treated more directly with standard therapy. I feel that use of massage-type therapy would probably be the best way to approach this, and we'll see if we can arrange this through her insurance company. And that's at page 136. And that's when she got into all that physical therapy that shows that she continues to have those type of problems. The other point that I did want to make is on the credibility issue. Basically, there's, you know, he penalizes her for trying to work. First he finds that the attempt to work is not substantial gainful activity, because it's very part-time work. Social security regulations are designed to try to get people back to work. They have what we call unsuccessful work attempts. You work for three months, no matter what you make, and it stops because of your disability, it doesn't count. It's an unsuccessful work attempt. They want you to do that. Social security has trial work periods. Up to nine months you can work under certain conditions, and then if you're successful, they start to reduce your benefits. If you're not successful, your benefits continue. The whole point is to try to get her to work. The fact that she goes back and tries to work during this process says mounds in terms of her motivation to work. And they try to make it like, well, she tried to work, so obviously she can work. When he finds that it's not successful, it's unsubstantial. So, you know, to me that's a big point. And then my very last issue is going to be with respect to the harmless error. The judge accepts opinions, but he never puts them into his questions to the vocational consultant. There's no case law that says an incomplete hypothetical question can be relied upon in denying benefits. There just isn't. So based upon this evidence, that hypothetical was incomplete. There's other reasons to distinguish the case cited by the defendant, but I'm out of time. Thank you. We thank both counsel for the argument. The case just argued is submitted. All other cases in the calendar today have been submitted on the briefs, so we're at an end, and we are adjourned. Thank you. All rise. Thank you.
judges: Hug, Clifton, Archer